# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Curtis Pronk,

       Plaintiff,

v.

City of Rochester,

       Defendant.

Case No. 22-cv-3090 (MJD/DLM)

**ORDER**

---

This matter is before the Court on Plaintiff Curtis Pronk's Motion to Amend the Complaint, (Doc. 17), which Defendant City of Rochester opposes, (Doc. 24). The Court held a motion hearing on June 20, 2023, and ordered supplemental briefing, (Doc. 25), which the parties have now filed (Docs. 26, 28). For the reasons that follow, the Court grants Plaintiff's Motion.

## BACKGROUND

Mr. Pronk is a 61-year-old former employee of the City of Rochester who worked as a financial administrator from 2006 until August 31, 2021, in its Fire Department. (Doc. 1 ¶¶ 2, 5, 12.) He retired on August 31, 2021, but claims his former employer constructively discharged him on that date through discriminatory treatment that amounted to a hostile work environment. (*Id.* ¶¶ 38, 42.) On February 10, 2022, Mr. Pronk filed a Charge of Discrimination with the EEOC. (Doc. 27 at 4–5.) On the EEOC's Charge of Discrimination form, Mr. Pronk checked the provided box which states as follows: "I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies

if I change my address or telephone number and cooperate fully with them in the processing

of my charge in accordance with their procedures." (*Id.* at 5.) On September 19, 2022, the

EEOC issued Mr. Pronk a Determination and Notice of Rights notifying him of his right

to file suit based on the allegations in his Charge. (Doc. 19 at 60–62.) Shortly thereafter,

Mr. Pronk initiated this action on December 14, 2022. (*See* Docket.) In the operative

Complaint, he brings a single cause of action for violating the Age Discrimination in

Employment Act ("ADEA") under 29 U.S.C. § 621 *et seq.* (Count 1). (Doc 1 ¶¶ 46–47.)

Specifically, he alleges that his former employer willfully and unlawfully

discriminated against him based on his age by: foregoing his annual performance review

for two years when younger employees received such reviews, (*id.* ¶ 9); subjecting him to

a pattern of vague critical comments about his job performance, (*id.* ¶ 15); requiring

detailed explanations for how he would perform tasks not required by younger employees,

(*id.* ¶ 16); applying job performance measurements to him not applied to younger

employees, (*id.* ¶ 17); altering his job duties and reducing his pay, (*id.* ¶¶ 18, 36); removing

his supervisory duties without explanation or the usual vetting required according to the

Collective Bargaining Agreement in collaboration with the union—and doing so in a few

weeks instead of the usual six-month period, (*id.* ¶¶ 19–23); changing his monetary

incentives related to retirement, (*id.* ¶ 24); creating the ruse of an inclusive process for

Plaintiff's feedback on his new position that was imposed to force him to leave his job, (*id.*

¶¶ 26–27, 30); failing to follow the former employer's disciplinary process for his alleged

performance deficiencies, (*id.* ¶¶ 28–29); failing to provide him his performance record

upon request in violation of Minnesota law, (*id.* ¶ 31); creating a time-pressured financial

incentive to voluntarily retire instead of pursue a formal grievance, (*id.* ¶¶ 32, 38); imposing other job responsibilities on Plaintiff beyond his job description not similarly imposed on younger employees, (*id.* ¶ 34); and using or condoning the use of a nickname for him intended to humiliate or embarrass him, (*id.* ¶¶ 40, 42).

As relief, he seeks statutory, compensatory, and liquidated damages, injunctive and equitable relief, and fees and costs. (*Id.* ¶ 47.) The City of Rochester filed its Answer on January 24, 2023. (Doc. 6.) Following this, the Court issued a Pretrial Scheduling Order setting the deadline for filing amended pleadings as June 30, 2023. (Doc. 11.)

Meanwhile, after filing this lawsuit, Mr. Pronk's counsel contacted the MDHR on March 31, 2023, to inquire whether the agency would also issue a Determination and Notice of Rights—including the right to sue. (Doc. 19 at 63.) In response, the MDHR stated that "MDHR does not issue right to sue letters and must be issued through the EEOC. Also I did not find a filed charge for Curtis Pronk[.]" (*Id.*) Thus, it became clear that although Mr. Pronk had elected cross-filing of his Charge with both the EEOC and MDHR, for unknown reasons, only the EEOC had received the Charge, and the MDHR had not.

Mr. Pronk now timely moves to amend the Complaint according to the Pretrial Scheduling Order and brought his Motion pursuant to Federal Rule of Civil Procedure 15(a)(2) that permits amendment "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In his proposed First Amended Complaint ("FAC"), (Doc. 19), Mr. Pronk seeks to amend his Complaint to add:

1. A claim against the City of Rochester under the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A *et seq.* (2022). (Doc. 19 ¶ 1.)

2. A claim against the City of Rochester for constitutional deprivation of his equal protection and due process rights in violation of 42 U.S.C. § 1983. (*Id.* ¶¶ 1, 52–53, 58.)

3. Three new Defendants sued in their individual and official capacities for willfully violating 42 U.S.C. § 1983 relating to equal protection and due process claims, as well as for civil conspiracy, including Eric Kerska, Chief of the City's Rochester Fire Department; Vance Swisher, Deputy Fire Chief of the City's Rochester Fire Department; and Linda Hillenbrand, Director of Human Resources for the City. (*Id.* ¶¶ 4–6, 52–57.)

4. Allegations relating to his proposed claim under the MHRA. (*Id.* ¶¶ 7, 51.)

5. Allegations about the relevant employment policies and practices of the Rochester Fire Department. (*Id.* ¶¶ 22, 26, 36.)

6. Punitive damages for his 42 U.S.C. § 1983 claims. (*Id.* ¶¶ 52–57, 58.)

7. Additional fee and cost requests pursuant to the MHRA and 42 U.S.C. § 1983. (*Id.* ¶ 58.)

8. Treble damages under the MHRA. (*Id.* ¶¶ 51, 58.)

Defendant opposes the proposed amendments as futile because they could not withstand a motion to dismiss. (Doc. 24.) The Court held a motion hearing on June 20, 2023, at which it ordered supplemental briefing from the parties on whether Mr. Pronk's proposed amendments to his Complaint are futile. Having reviewed those supplemental briefs, (Docs. 26, 28), the Court now turns to its analysis of Mr. Pronk's Motion.

### ANALYSIS

Leave to amend a pleading is governed by Federal Rule of Civil Procedure 15(a)(2), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the right to amend is not absolute. *Sherman v. Winco*

*Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). Courts may deny a party's motion for,

among other reasons, "futility of the amendment." *Id.* (citing *Moses.com Sec., Inc. v.*

*Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)). A proposed

amendment to a complaint is futile if "the amended complaint could not withstand a motion

to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Cornelia I.*

*Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008) (citing *In re Senior*

*Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007)).

I.   **Mr. Pronk's timely filing of a U.S. Equal Employment Opportunity Commission ("EEOC") claim and election of cross-filing with the Minnesota Department of Human Rights ("MDHR") tolled his MHRA claims' statute of limitations.**

Mr. Pronk seeks to add a claim under Count II against the City for violating the

MHRA by discriminating against him based on age. The City asserts that such a claim is

time barred because Mr. Pronk did not file an administrative charge of discrimination or

file suit within one year of the acts giving rise to the claim. *See* Minn. Stat. § 363A.28,

subd. 3(a). For his part, Mr. Pronk notes that the EEOC and MDHR have a workshare

agreement, and according to that agreement, his timely Charge filed with the EEOC is

deemed a timely Charge filed with the MDHR, provided that he asked that the claim be

cross-filed (and he did). In the alternative, Mr. Pronk seeks equitable tolling of his state-

law claim, since any failure to perfect his cross-filing of that claim with the MDHR was

attributable to someone other than him (either the EEOC or MDHR, or both).

Before filing suit alleging discrimination in violation of Minnesota or federal law,

plaintiffs may (and in some cases, are required to) bring the matter to the MDHR or EEOC

by filing a timely administrative charge of discrimination. *Strickland v. Minnesota AFL-CIO*, No. 17-cv-5071 (SRN/BRT), 2018 WL 6004301, at *1 n.1 (D. Minn. Oct. 1, 2018) (citing *E.E.O.C. v. Commercial Office Prods. Co.*, 486 U.S. 107, 110–12 (1988); *Worthington v. Union Pac. R.R.*, 948 F.2d 477, 479 (8th Cir. 1991); *Wolhart v. Genuine Parts Co.*, No. 5-cv-0254 (RHK/JSM), 2006 WL 839506, at *6 (D. Minn. Mar. 30, 2006)), *R. and R. adopted*, 2018 WL 6003972 (D. Minn. Nov. 15, 2018). "To address both jurisdictional and practical concerns, the EEOC and the MDHR regularly create and update worksharing agreements." *Fox v. Thermoform Plastics, Inc.*, No. 6-cv-4507 (DWF/SRN), 2007 WL 2376651, at *3 (D. Minn. Aug. 16, 2007) (citing 42 U.S.C. § 2000e–8(b) (authorizing the EEOC to create worksharing agreements with state employment practices agencies)). "Courts regularly uphold the validity of EEOC worksharing agreements for determining limitations periods." *Id.* (citing *Worthington*, 948 F.2d at 79–80; *Morris v. Conagra Foods, Inc.*, 435 F. Supp. 2d 887, 900–01 (N.D. Iowa 2005)). "Pursuant to the workshare agreement between the EEOC and the MDHR, 'each agency serves as the agent of the other for the purpose of receiving a charge.'" *Strickland*, 2018 WL 6004301, at *1 n.1 (quoting *Johnson v. Hubbard Broad., Inc.*, 940 F. Supp. 1447, 1460 (D. Minn. 1996) (taking judicial notice of the workshare agreement between the EEOC and the MDHR and holding that when the plaintiff filed her charge with the EEOC, the EEOC accepted it on behalf of both the MDHR and itself)).

The Court finds that based upon the facts alleged in the Complaint and the workshare agreement between the EEOC and the MDHR, Mr. Pronk's Charge should be deemed timely received by the MDHR on or about the time he submitted it to the EEOC.

*See* 29 C.F.R. § 1626.10(c); Minn. R. 5000.0400, subp. 2a. Viewing Mr. Pronk's

allegations in the light most favorable to him, the Court finds that his last day of

employment was August 31, 2021, which was the last date that he alleges he suffered

unlawful discriminatory conduct. (Doc. 1 ¶¶ 38, 42.) On February 16, 2022—within the

one-year period permitted—Plaintiff filed a Charge of Discrimination with the EEOC,

checking the box requesting that it be cross-filed to the MDHR. (Doc. 27 at 4–5.) Pursuant

to its workshare agreement, the EEOC should have cross-filed his Charge with the MDHR

effective to on or around February 16, 2022 date. *Strickland*, 2018 WL 6004301, at *1 n.1

(quoting *Johnson*, 940 F. Supp. At 1460); 29 C.F.R. § 1626.10(c) ("When a worksharing

agreement with a State agency is in effect . . . [c]harges received by one agency under the

agreement shall be deemed received by the other agency for purposes of [a timeliness

determination."); *see also* Minn. R. 5000.0400, subp. 2a ("A charge filed with EEOC . . .

may be referred to the [MDHR]. The charge is considered filed on the date the department

receives from the federal agency sufficient material for a charge to be considered filed

under part 5000.0400.") Thus, Mr. Pronk's Charge appears timely filed with both agencies.

On the issue of timeliness in cross-filed discrimination charges, *D.W. v. Radisson

Plaza Hotel Rochester*, 958 F. Supp. 1368, 1374 (D. Minn. 1997), is instructive. In *D.W.*,

the defendants claimed that the plaintiffs had not timely filed a charge with the MDHR. *Id.*

The court found that the plaintiffs had timely filed with the EEOC. *Id.* That fact alone

satisfied the Court that, because of the workshare agreement between the EEOC and

MDHR, "it necessarily follows that the filings also satisfy the one-year period provided by

the MHRA." *Id.* Like in *D.W.*, the Court finds that Mr. Pronk's filing with the EEOC tolled

the running of the limitations period for his MHRA claims. Therefore, for purposes of review at this early stage of litigation, the Court thus finds that Mr. Pronk should not be denied the opportunity to litigate his MHRA claims in this forum. It therefore grants his Motion to Amend as to his proposed MHRA-based allegations.

The *D.W.* opinion noted that the defendants could have challenged such a finding by demonstrating that the MHRA claims were not a part of the plaintiffs' EEOC filings, or were not properly forwarded to the MDHR. *Id.* Here, the City has raised the latter challenge from *D.W.*—that the EEOC did not properly forward Mr. Pronk's Charge to the MDHR. However, the Court is persuaded that such circumstances, considering Mr. Pronk's affirmative request to the EEOC to cross-file his Charge, do not change the Court's analysis that the MDHR is deemed to have received notice of the Charge at about the time when Mr. Pronk filed it with the EEOC.

The City asks this Court to take a hard line on the effect of the workshare agreement for diligent claimants and hold that claimants who file charges of discrimination with either agency should act as though no workshare agreement exists and place no reliance on any formal box electing cross-filing. Yet the Court finds that such a position fails to give effect to the workshare agreement. It also fails to give meaning to the action of the EEOC in representing to claimants that cross-filing can be elected, and to a claimant's affirmative choice to check that cross-filing box.

Even if the Court adopted the City's argument on what constitutes diligence and ignored the workshare agreement that deems a timely filed charge received by its counterpart agency, the Court cannot ignore that the EEOC affirmatively represented it

8

would cross-file Mr. Pronk's Charge with the MDHR on its form, or that Mr. Pronk affirmatively elected that the EEOC do so. The Court finds that such actions in the absence of the workshare agreement would support equitable tolling, providing a secondary basis to grant Mr. Pronk's Motion to Amend to add his allegations about violations of the MDHR.

Specifically, the administrative deadlines of the EEOC and MDHR are not jurisdictional limitations that bound the edge of the Court's powers; instead, they "operate[] in the nature of a statute of limitations and [are] subject to equitable tolling and estoppel." *Anderson v. Unisys Corp.*, 47 F.3d 302, 305–06 (8th Cir. 1995) (citing *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982) (holding that the administrative filing period under Title VII is subject to waiver, estoppel, and equitable tolling); *Heideman v. P.F.L., Inc.*, 904 F.2d 1262, 1265 (8th Cir. 1990) (holding that the administrative filing period under the ADEA is subject to equitable tolling), *cert. denied*, 498 U.S. 1026 (1991); *DeBrunner v. Midway Equip. Co.*, 803 F.2d 950, 952 (8th Cir. 1986) (finding ADEA filing requirement subject to equitable tolling). To determine whether equitable tolling is warranted, courts consider both a plaintiff's conduct and the possible prejudice to a defendant. *Anderson v. H-Window Co.*, No. C9-98-1103, 1999 WL 88953, at *3 (Minn. Ct. App. Feb. 23, 1999) (citing *Carlson v. Indep. Sch. Dist. No. 623*, 392 N.W.2d 216, 223–24 (Minn. 1986); *State by Khalifa v. Russell Dieter Enters., Inc.*, 418 N.W.2d 202, 206 (Minn. Ct. App. 1988)).

Court have held that equitable tolling is appropriate where the delays to a claim's timely filing were beyond a plaintiff's control. *Koss v. Young Men's Christian Ass'n of Metro. Minneapolis*, 504 F. Supp. 2d 658, 661 (D. Minn. 2007) (citing *Shempert v.*

*Harwick Chem. Corp.*, 151 F.3d 793, 798 (8th Cir. 1998)); *accord Anderson*, 1999 WL 88953, at *3 (citing *Ochs v. Streater, Inc.*, 568 N.W.2d 858, 860 (Minn. App. 1997)). "Equitable tolling may be justified when 'an administrative agency misleads a complainant . . . .'" *Kroll v. St. Cloud Hosp.*, No. 5-cv-0915 (JRT/RLE), 2006 WL 1851138, at *2 (D. Minn. June 30, 2006) (quoting *Anderson*, 47 F.3d at 306–07; citing *Warren v. Dept. of Army*, 867 F.2d 1156 (8th Cir. 1989)). More than innocent inadvertence is required to justify equitable tolling. *Wussow v. Andor Tech.*, No. 12-cv-0614 (DSD/TNL), 2012 WL 5199528, at *3 (D. Minn. Oct. 22, 2012) (quoting *Jones v. Consol. Freightways Corp.*, 364 N.W.2d 426, 429 (Minn. Ct. App. 1985); citing *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1330 (8th Cir. 1995)). It is Plaintiff's burden to show that equitable tolling is warranted. *Id.* (citing *Bartlett v. Miller & Schroeder Muns., Inc.*, 355 N.W.2d 435, 441 (Minn. Ct. App. 1984)).

Here, but for the EEOC's failure to follow its cross-filing agreement with the MDHR as requested by Mr. Pronk (and required by both state and federal regulations, *see* 29 C.F.R. § 1626.10; Minn. R. 5000.0400, subp. 2a), the MDHR would have timely received his Charge. Viewing Mr. Pronk's allegations in the light most favorable to him, the Court finds no lack of diligence on Mr. Pronk's part. It also finds no unfair prejudice to the City that received sufficient notice of the factual allegations raised against it in Mr. Pronk's EEOC Charge, which were identical to those giving rise to his claim under the MHRA. (Doc. 27 at 4–9.)

The City argues that the Court should interpret the available basis for equitable tolling narrowly here. It urges the Court to find that equitable tolling applies here only if

the EEOC affirmatively, fraudulently concealed the means for Mr. Pronk to seek an administrative remedy from the MDHR, and Mr. Pronk could not have discovered that concealment any sooner than he did. The Court finds that the City has not provided persuasive reasons for the Court to follow such a narrow interpretation of the bases for equitable tolling.

Anticipating that the Court might decline such a narrow interpretation, the City argues that even if the Court follows a more liberal interpretation of the possible bases for equitable tolling, it should still find that tolling is not warranted here. The City relies on *Breen v. Norwest Bank Minnesota, N.A.*, 865 F. Supp. 574 (D. Minn. 1994), to argue that Plaintiff lacked diligence and therefore the statute of limitations should not be tolled. In *Breen*, a plaintiff filed a charge with the MDHR and the court denied her request for equitable tolling of her MHRA claim because the MDHR had neglected to automatically cross-file her claim with the EEOC. *Id.* at 577. The facts of *Breen*, however, are distinguishable. In *Breen*, the plaintiff's charge with the MDHR related to allegations outside of the one-year statutory window permitted, and so the Court found that even if cross-filing had occurred, the same untimeliness that applied to the MDHR charge would have also applied to the EEOC charge, impacting its overall decision. *Id.* Here, the opposite is true; had the EEOC cross-filed Mr. Pronk's Charge with the MDHR, it would have been timely filed. And unlike in *Breen*—where the plaintiff had signed a settlement agreement concerning the discriminatory treatment that released all claims, here, there is no such agreement releasing any claims. *Id.* at 577–78. Finally, in *Breen* the plaintiff merely relied on the idea that her charge would be automatically cross-filed with the EEOC once she

filed it with the MDHR, *id.* at 576–77; in contrast, Mr. Pronk filed his charge with the EEOC, using an EEOC form, that had the *agency's* language: "I want this charge filed with both the EEOC and the State or local agency, if any. I will advise the agencies if I change my address or telephone number and will cooperate fully with them in the processing of my charge in accordance with their procedures." (Doc. 27 at 5.) To the extent that *Breen* counseled that an equitable tolling analysis should consider the agency's conduct and a plaintiff's diligence, here the agency affirmatively represented to Mr. Pronk through its form that (1) it would cross-file his claim with the state agency; and (2) the diligence required by Mr. Pronk was to keep each agency apprised of any changes in address or phone number and to cooperate with the agencies' processing of the charges. Mr. Pronk was entitled to rely on those assurances.

In sum, Mr. Pronk filed a timely Charge of Discrimination with the EEOC that the Court deems timely filed with the MDHR under the agencies' workshare agreement. In other words, his statute of limitations for the MHRA claims was tolled when he filed his EEOC claim, and while his claim remained pending. Additionally, for reasons outside of Mr. Pronk's control and against his affirmative election to cross-file his Charge, the EEOC did not cross-file his Charge with the MDHR. The Court finds that Mr. Pronk lacked no diligence for waiting for the EEOC to investigate his Charge and to issue a probable cause determination because he understood that his election to cross-file his Charge with the MDHR had occurred and would not be fatally delayed by the EEOC's investigation period. Thus, even if his relevant statute of limitations had not been tolled—which the Court finds it was—equitable tolling would apply. Viewing his allegations in the light most favorable

to Mr. Pronk, Mr. Pronk's MHRA allegations in his proposed FAC are not futile.

Therefore, the Court grants his Motion as to these additions.

**II.    Mr. Pronk's proposed § 1983 claims are not futile because the ADEA does not provide the exclusive federal remedy for age-based employment discrimination.**

Mr. Pronk seeks to amend his Complaint to sue three new Defendants in their individual and official capacities, including Eric Kerska, Chief of the Rochester Fire Department; Vance Swisher, Deputy Fire Chief of the same Department; and Linda Hillenbrand, the City's Director of Human Resources. (Doc. 19 ¶¶ 4–6.) He proposes to allege in Count III that these Defendants willfully deprived him of the equal protection of law in violation of 42 U.S.C. § 1983, (*id.* ¶¶ 52–53); in Count IV that these Defendants willfully deprived him of due process and property in violation of 42 U.S.C. § 1983, (*id.* ¶¶ 54–55); and in Count V, that these Defendants willfully engaged in a civil conspiracy to violate his constitutional rights, (*id.* ¶¶ 56–57). Mr. Pronk also proposes to add a claim against the City under § 1983 for alleged deprivation of his constitutional rights to equal protection and due process. (*Id.* ¶ 58.) Concerning equal protection and due process, he claims that the Defendants changed his job duties and pay in disregard of portions of the Department's policies and protocols for such reclassifications—policies and protocols that the proposed Defendants allegedly followed for other similarly situated younger employees—because these Defendants wanted to create conditions that would cause Mr. Pronk to quit. (*Id.* ¶¶ 52, 54, 58.) Because the proposed Defendants allegedly acted with deliberate indifference, willfulness, wantonness, and malice, he also seeks to add punitive damages. (*Id.* ¶¶ 53, 55, 57–58.)

The City of Rochester concedes that Mr. Pronk can sue these proposed Defendants in their official capacities if his § 1983 claims are allowed to proceed, but argues that these amendments are futile because the more specific remedies for age discrimination under the ADEA preempt the broader remedial scheme of § 1983. In other words, the City argues that the ADEA forms the exclusive federal remedy for age discrimination in employment. Thus, it claims that Mr. Pronk cannot gap fill the ADEA's lack of individual liability or punitive damages by also bringing those claims—and seeking those remedies—under § 1983.

To address the parties' dispute, the Court first briefly considers the ADEA and § 1983's purposes, language, and practical effects. In enacting the ADEA, Congress declared it unlawful for an employer to "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). This protection generally covers private, state, and federal employees who are forty years of age and older. *Id.* §§ 630(f), 631(a), 633a(a). In contrast, § 1983 authorizes suits to enforce individual rights against state and local government officials if they cause "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws[.]" 42 U.S.C. § 1983; *see also City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 119 (2005). Unlike the ADEA, § 1983 does not create new rights, but rather provides a vehicle to enforce federal rights violated by a non-federal government entity acting under the government's authority. There are also some important differences between the two remedial schemes; for example, who may be sued, who may sue, and what types of damages are available. *See* 29 U.S.C. § 623; *Gen. Dynamics Land*

14

*Sys., Inc. v. Cline*, 540 U.S. 581, 593 (2004); *Levin v. Madigan*, 692 F.3d 607, 621 (7th Cir. 2012) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91–92 (2000)).

Because of these differences, and because Congress enacted the ADEA *after* § 1981, disputes regularly arise over how and whether to apply both laws to federal age discrimination claims. To address such disputes, the Supreme Court has provided several guiding principles. "[T]he Court has explained section 1983 does not afford a remedy for statutory violations unless the statute creates 'rights, privileges, or immunities' within the meaning of section 1983." *Henley v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012) (quoting *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981)). Additionally, if Congress enacts a remedial device that is "sufficiently comprehensive" to address a deprivation of rights that could be otherwise brought in a lawsuit under 42 U.S.C. § 1983, that could demonstrate that Congress intends the new legislation to preclude § 1983. *Sea Clammers*, 453 U.S. at 20. The Supreme Court has also held that courts should not "lightly conclude" preclusion of § 1983 when Congress enacts new laws. *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423–24 (1987) (quoting *Smith v. Robinson*, 468 U.S. 992, 1012 (1984)). Rather, "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). And finally, the Court has held that a comparison of the differing scopes of rights, privileges, and immunities of a statute and § 1983 can also help to guide whether that statute is tailored to precisely address the same claims, or whether it sweeps more broadly or narrowly in certain areas. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257

15

(2009) (comparing the scope of equal protection claims under § 1983 and claims under Title IX in concluding that Title IX is not the exclusive mechanism for addressing gender discrimination in schools and does not preclude § 1983 suits to enforce the constitutional right to equal protection).

In applying this guidance when it comes to the ADEA and § 1983, federal circuit courts are divided on whether the ADEA, as a more specific federal statute concerning age discrimination, preempts the available relief for age discrimination claims under the broader 42 U.S.C. § 1983 remedial scheme. Several Circuits have held that the ADEA's remedial scheme is specific and comprehensive enough to preclude suits for age discrimination brought under § 1983. *See Tapia-Tapia v. Potter*, 322 F.3d 742, 744 (1st Cir. 2003) (citing *Lafleur v. Tex. Dep't of Health*, 126 F.3d 758, 760 (5th Cir. 1997); *Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C. Cir. 1991); *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir. 1989)); *Zombro*, 868 F.2d at 1367–72; *Lafleur*, 126 F.3d at 760; *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006); *Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1057 (9th Cir. 2009); *Migneault v. Peck*, 158 F.3d 1131, 1140 (10th Cir. 1998), *cert. granted, judgment vacated on other grounds sub nom. Bd. of Regents of Univ. of New Mexico v. Migneault*, 528 U.S. 1110 (2000), *and abrogated on other grounds by Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000); *Chennareddy*, 935 F.2d at 318. In contrast, the Seventh Circuit has held that the ADEA is not the sole remedy for age discrimination claims. *Levin*, 692 F.3d at 622. None of these cases are binding on this Court.

16

The Eighth Circuit has yet to take a position on the question of ADEA's preclusive effect on § 1983, and district courts within the Circuit are split. Some have found that the ADEA is the exclusive remedy for age discrimination. *See, e.g.*, *Kelley v. White*, No. 5:10-cv-0288 (JMM), 2011 WL 4344180, at *3 (E.D. Ark. Sept. 15, 2011), *aff'd per curiam on other grounds*, 458 F. App'x 575 (8th Cir. 2012); *Dudley v. Lake Ozark Fire Prot. Dist.*, 2010 WL 1992188, 8 (W.D. Mo. 2010). Others have held that the ADEA does not preclude § 1983 claims. *See Mustafa v. Nebraska Dep't of Corr. Servs.*, 196 F. Supp. 2d 945, 956 (D. Neb. 2002); *Mummelthie v. City of Mason City, Iowa*, 873 F. Supp. 1293 (N.D. Iowa 1995), *aff'd per curiam on other grounds*, 78 F.3d 589 (8th Cir. 1996). The *Mummelthie* opinion has been called "[t]he most comprehensive district court opinion holding the ADEA does not preclude § 1983 claims[.]" *Ahlmeyer*, 555 F.3d at 1057. In *Mummelthie*, the Court reasoned that the implied preclusion of § 1983 by the ADEA is a disfavored outcome because it would act as a court-imposed implied partial repeal of § 1983 where Congress has not clearly expressed such an intention. 873 F. Supp. at 1319.

In light of both the unsettled law in this Circuit and the early point in this action, the Court is persuaded by the reasoning in *Mummelthie* and finds that while the ADEA provides the exclusive remedy for age discrimination claims created by its own terms, its exclusivity ceases when an employer's conduct also violates a right secured by the Constitution. *Id.* at 1324 (collecting cases). In other words, the ADEA does not provide the exclusive federal remedy for employment discrimination, and Mr. Pronk can properly allege both.

Supporting this conclusion, the Court agrees the ADEA is best analogized to Title VII, as many other courts have found. *Id.* at 1323–24 (collecting cases). Concerning Title VII, the Eighth Circuit has held that a claim brought under Title VII does not preclude a claim brought for a constitutional violation on the same facts under § 1983. *See Henley*, 686 F.3d at 642 ("We therefore conclude that while Title VII provides the exclusive remedy for employment discrimination claims created by its own terms, its exclusivity ceases when the employer's conduct also amounts to a violation of a right secured by the Constitution.") (collecting cases). In reaching this conclusion, the Eighth Circuit reasoned that if a plaintiff brings claims based only on violations of the rights created by Title VII, then Title VII is the exclusive remedy for those violations, but if a plaintiff alleges facts about an employer's conduct that violate not only rights protected by Title VII, but also by an independent source, "then Title VII supplements, rather than supplants, existing remedies for employment discrimination." *Id.* at 641.

The Court also reaches this conclusion because, in reviewing the Eighth Circuit's jurisprudence on Title VII and comparing it to the ADEA's remedial scheme, the Court concludes that the ADEA is not "sufficiently comprehensive" to address the deprivation of some rights under the Constitution that may be brought in an age discrimination suit, but sound in broader federal protections than the ADEA provides. For example, facts alleging equal protection and due process claims that may be part of an ADEA claim may also belong to a broader category of constitutional protections that are beyond the ADEA's scope. Mr. Pronk also brings a count for civil conspiracy to violate his constitutional rights, further complicating the legal analysis here. Without settled caselaw in this Circuit, the

18

Court finds that the Eighth Circuit's jurisprudence on Title VII provides a persuasive indicator for the direction the Eighth Circuit may follow in addressing the ADEA's preclusive effect on § 1983 claims. This conclusion also tracks the Supreme Court's admonition that courts not "lightly conclude" that § 1983 is precluded, and that courts should give full effect to co-existing statutes where Congress has not clearly expressed that courts should do otherwise. *Wright*, 479 U.S. at 423–24 (quoting *Smith*, 468 U.S. at 1012); *Morton*, 417 U.S. at 551.

Thus, the Court concludes that Mr. Pronk's proposed allegations of § 1983 violations do not suffer from futility. He alleges both that his substantive federal rights provided by Congress in the ADEA have been violated and should be remedied under that remedial vehicle *and* that his substantive federal rights to equal protection and due process provided by the Constitution have been violated through a civil conspiracy and should be remedied under § 1983. The Court holds that Mr. Pronk's allegations are appropriately brought under the remedial vehicles of both the ADEA and § 1983. For these reasons, Plaintiff's Motion is granted as to his § 1983-based allegations.

Accordingly, pursuant to Federal Rule of Civil Procedure 15(a)(2), and based on the above, and on all the files, records, and proceedings in this action, **IT IS ORDERED** that:

1) Plaintiff Curtis Pronk's Motion to Amend the Complaint, (Doc. 17), is **GRANTED**; and

2) Mr. Pronk must file a clean copy of his First Amended Complaint within 14 days of this Order.

19

Date: September 8, 2023                    s/Douglas L. Micko
                                           DOUGLAS L. MICKO
                                           United States Magistrate Judge